STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DONALD
ALSTON, JAMES BARNES, HARRY WILLIAMS AND ABDUL-
LAH KHALIQ, A/K/A ERNEST CAULFIELD, A/K/A ERNEST
COFIELD, DEFENDANTS-RESPONDENTS.

Argued January 28, 1981—Decided October 21, 1981.

*Susan W. Sciacca*, Assistant Prosecutor, argued the cause for appellant (*Roger W. Breslin, Jr.*, Bergen County Prosecutor, attorney).

*Susan Heller Fessler*, Assistant Deputy Public Defender, argued the cause for respondents (*Stanley C. Van Ness*, Public Defender, attorney).

*Debra L. Stone*, Deputy Attorney General, argued the cause for amicus curiae, Attorney General (*John J. Degnan*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

This appeal presents us with the task of clarifying the scope of the "automobile exception" to the Fourth Amendment requirement that searches be conducted pursuant to a warrant based on probable cause. More particularly, the question to be resolved is whether the primary rationale for this exception—the inherent mobility of an automobile stopped on an open highway—dissipates once the vehicle's occupants are arrested and removed from the car. The trial court and Appellate Division read this Court's decision in *State v. Ercolano*, 79 *N.J.* 25 (1979), to require the holding that once the occupants of an automobile are arrested for possession of contraband and taken into police custody, the vehicle is no longer readily movable and the police must obtain a warrant before conducting a full search of the passenger compartment for further contraband, even if there existed sufficient probable cause for the search at the scene. We disagree.

I

On the night of October 23, 1978 Bergen County Police Detectives Marc Fenech and John Schmidig, stationed in an unmarked patrol car, pursued a Buick automobile speeding westbound on Route 46 in Ridgefield Park. During the chase the officers observed three of the four occupants moving about in the vehicle as if attempting to conceal something. After they succeeded in stopping the Buick, the detectives asked the driver for vehicle credentials, whereupon Alston opened the glove compartment, removed a large envelope, and began looking through its contents. Detective Schmidig then shone his flashlight into the open glove compartment and observed three shotgun shells. The four men were asked to exit from the vehicle. The officers patted them down for weapons but found none on their persons. Detective Fenech then returned to the Buick to retrieve the shotgun shells while his partner remained at the rear of the car with the four occupants.

Detective Fenech opened the front passenger door of the vehicle, reached into the open glove compartment and took the shells. In the process, Fenech observed an opaque plastic bag

lying on the floor, protruding about twelve inches from under the front passenger seat, and covering what appeared to be a long, thin object. The detective reached down and felt the protruding end of the bag. Because the object "felt like a gun," he picked it up, opened the bag, and discovered that it was indeed a sawed-off shotgun. Thereupon the four occupants of the vehicle were placed under arrest, advised of their rights and handcuffed. A further search of the vehicle uncovered additional weapons secreted in the passenger compartment—a revolver in a holster under the front seat, and a .38 caliber revolver, fully loaded, wedged in a crevice between the top and bottom halves of the back seat.

After the weapons had been removed, the contents of the vehicle were inventoried and the vehicle itself towed from the scene. The four defendants were taken to police headquarters and charged under *N.J.S.A.* 2A:151–41 with the unlawful carrying and possession of the three weapons seized from the car. Defendant Alston was also issued summonses for speeding and for driving with a suspended license.

The trial court granted defendants' motions to suppress the three weapons obtained in the warrantless search of the car.[1] On appeal the Appellate Division reversed the trial court's order suppressing the shotgun found under the front seat, but affirmed the suppression of the two revolvers seized after defendants had been placed under arrest. In regard to the shotgun the court below held that "once the officers observed the live shotgun shells, reasonable precautions for their own safety justified their ordering defendants out of the car, looking into it cursorily and unwrapping the object observed protruding from under the seat which had the appearance of being a firearm,"

---

[1] Although the reasons for the trial court's determination are not entirely clear from the record, that court appears to have concluded that the mere observation of three shotgun shells in the glove compartment of the car did not give the detectives probable cause to seize the shells and conduct a further search for weapons.

citing *State v. Kennedy*, 134 *N.J.Super.* 454 (App.Div.1975). Regarding the two handguns, however, the Appellate Division read *Ercolano* to require that a warrantless search of a car cannot be justified under the automobile exception to the warrant requirement unless both probable cause and sufficient exigent or exceptional circumstances exist. It held that "once the defendants were out of the car, their persons searched, and they were placed under arrest and handcuffed, there were no longer any exigent or exceptional circumstances present justifying the warrantless search of the vehicle."

We granted the State's motion for leave to appeal the Appellate Division's affirmance of the trial court order suppressing the two revolvers, but denied the defendants' cross-motion for leave to appeal the reversal of the order suppressing the shotgun. Therefore, this appeal involves only the State's challenge to the suppression of the two handguns, the fruits of the post-arrest search. Because we find that the officers conducted a valid automobile search, we now reverse and remand for trial.

## II

As a preliminary matter the Attorney General, as *amicus curiae*, argues that the defendants lacked the legitimate or reasonable expectation of privacy in the particular areas of the vehicle searched necessary to confer "standing" to challenge the warrantless search as a violation of personal rights under the Fourth Amendment.[2] There is some debate over whether the

---

[2] We acknowledge that in *Rakas v. Illinois*, 439 *U.S.* 128, 99 *S.Ct.* 421, 58 *L.Ed.*2d 387 (1978), the Supreme Court held that the question of what persons may challenge a search and seizure as a violation of their Fourth Amendment rights "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." 439 *U.S.* at 140, 99 *S.Ct.* at 428, 58 *L.Ed.*2d at 399. However, we view the apparent change in the Court's labeling of this inquiry as a semantic difference without much significant analytic distinction, for the essential question remains whether the defendant moving to suppress evidence obtained and sought to be used against him has Fourth Amendment interests sufficient to qualify him as a person aggrieved

issue is properly before this Court.[3] Nevertheless, we believe that the challenge to defendants' standing raises important questions in the administration of criminal justice in this state. Therefore, we address fully this troublesome issue of Fourth Amendment jurisprudence.

Relying on the recent Supreme Court decisions in *Rakas v. Illinois*, 439 *U.S.* 128, 99 *S.Ct.* 421, 58 *L.Ed.2d* 387 (1978), and *United States v. Salvucci*, 448 *U.S.* 83, 100 *S.Ct.* 2547, 65 *L.Ed.2d* 619 (1980), the State argues that defendants Barnes, Williams and Khaliq, as mere passengers in an automobile not owned by them, had no standing to challenge the legality of the search of the vehicle, despite any ownership or possessory interest in the weapons seized. As to defendant Alston, the driver of the vehicle and the son of its owner, the State urges that although he may have legitimately possessed the car, the totality of the circumstances does not suggest that he entertained a reasonable expectation of privacy in the particular areas of the vehicle searched.

The underlying facts of *Rakas v. Illinois, supra,* are not unlike those of the present appeal. In *Rakas*, the defendants were passengers in an automobile stopped on an open highway searched by law enforcement officials without a warrant. The officers in that case, however, stopped the vehicle on information that it may have been an instrumentality in the commission of an armed robbery. The search in *Rakas*, conducted after

---

by an unlawful search and seizure. See *R.* 3:5–7(a). Therefore, being well aware of the substantive Fourth Amendment law involved, we adhere to the simple expedient term of "standing" in making reference to this threshold inquiry.

[3]The defendants object to the raising of the standing issue in this Court, claiming that the issue was not raised before the Appellate Division nor discussed by the prosecution in its Supreme Court brief. *Amicus*, however, argues that the prosecution raised the standing issue at the suppression hearing before the trial court, and alternatively that because appeals are taken from judgments or orders and not from the reasons given in support thereof, the issue is properly before this Court.

defendants were ordered from the vehicle, revealed a box of rifle shells in the locked glove compartment and a sawed-off shotgun under the front passenger seat. The defendants' motion to suppress was denied for the reason that defendants, as mere passengers who alleged no property interest in either the automobile searched or the items seized, lacked the requisite standing to bring the motion. On appeal an Illinois appellate court affirmed the defendants' lack of standing and the Illinois Supreme Court declined further review.

In reviewing the case on *certiorari*, the Supreme Court noted that "Fourth Amendment rights are personal rights which * * * may not be vicariously asserted." 439 *U.S.* at 133–34, 99 *S.Ct.* at 425, 58 *L.Ed.*2d at 394–95. Thus, a motion to suppress evidence obtained in violation of the Fourth Amendment may be successfully brought only by those persons whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of the incriminating evidence obtained in the search. *Id.*; see *Alderman v. United States*, 394 *U.S.* 165, 171–72, 89 *S.Ct.* 961, 965, 22 *L.Ed.*2d 176, 185–86 (1969). The Court then set forth the appropriate inquiry under its substantive Fourth Amendment doctrine, see *supra* at 84 n. 2:

> [T]he question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect. [439 *U.S.* at 140, 99 *S.Ct.* at 429, 58 *L.Ed.*2d at 399.]

Relying on *Jones v. United States*, 362 *U.S.* 257, 80 *S.Ct.* 725, 4 *L.Ed.*2d 697 (1960), a case involving a prosecution for certain possessory offenses, the petitioners in *Rakas* claimed that as passengers occupying the automobile searched, they had standing to contest the legality of the search because they were "legitimately on [the] premises" where the search occurred. 439 *U.S.* at 142, 99 *S.Ct.* at 429, 58 *L.Ed.*2d at 399–400. *Jones*, the leading case on the standing issue prior to *Rakas*, had posited two tests for determination of Fourth Amendment standing. The first was the rule of "automatic standing" in cases where an

essential element of the crime charged is possession of the seized property at the time of the contested search. See 362 *U.S.* at 263, 80 *S.Ct.* at 732, 4 *L.Ed.*2d at 703. The second was the "legitimately on the premises" test, by which the Court sought to quantify the interest in the searched premises necessary to confer standing. The latter standard took shape in the rule that "anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when the fruits are proposed to be used against him." 362 *U.S.* at 267, 80 *S.Ct.* at 734, 4 *L.Ed.*2d at 706.[4]

However, the *Rakas* Court abandoned *Jones*'s "legitimately on the premises" standard as the determinative factor in conferring standing because it "creates too broad a gauge for measurement of Fourth Amendment rights." 439 *U.S.* at 142, 99 *S.Ct.* at 429, 58 *L.Ed.*2d at 400.[5] Instead the Court applied the "legitimate expectation of privacy" analysis of *Katz v. United States*, 389 *U.S.* 347, 88 *S.Ct.* 507, 19 *L.Ed.*2d 576 (1967), which asked whether the area searched was one in which the movant had a legitimate expectation of privacy in the sense of freedom from governmental intrusion. Employing that approach in *Rakas* the Court rejected the petitioners' claims, concluding that they failed to assert a property or possessory interest in either the automobile searched or the property seized, and the circumstances failed to demonstrate that petitioners could have legitimately

---

[4]This branch of the *Jones* holding was reaffirmed by the Court in *Mancusi v. DeForte*, 392 *U.S.* 364, 368, 88 *S.Ct.* 2120, 2123, 20 *L.Ed.*2d 1154, 1159 (1968), wherein Justice Harlan noted that the "legitimately on the premises" test of *Jones* was intended to have general application to cases involving nonpossessory offenses as well. *Id.* at n. 5.

[5]In addition, the petitioners in *Rakas* had urged the Court to follow the suggestion in *Jones* that a person is aggrieved by an unlawful search and seizure if he merely is someone "against whom the search was directed." 439 *U.S.* at 134–35, 99 *S.Ct.* at 426, 58 *L.Ed.*2d at 395. See *Jones, supra*, 362 *U.S.* at 261, 80 *S.Ct.* at 731, 4 *L.Ed.*2d at 702. The *Rakas* Court expressly declined to adopt this "target" theory of Fourth Amendment standing, noting that this expanded approach had been "impliedly repudiated" in *Alderman, supra*, 439 *U.S.* at 135, 99 *S.Ct.* at 426, 58 *L.Ed.*2d at 395.

expected privacy in the searched areas of the car in which they were merely passengers. 439 *U.S.* at 149, 99 *S.Ct.* at 433, 58 *L.Ed.*2d at 404.

Just as *Rakas, supra,* had done away with *Jones*'s "legitimately on the premises" standard, *Salvucci* delivered the final blow to the "automatic standing" rule.[6] In *Salvucci* defendants were charged in a multi-count federal indictment with unlawful possession of stolen mail. The evidence that formed the basis of the indictment had been seized by police during the search, pursuant to a warrant, of an apartment leased by one defendant's mother. The defendants were successful in their motion to suppress, the district court holding that the affidavit supporting the search warrant application was deficient. The First Circuit affirmed, holding preliminarily that respondents, charged with unlawful possession of the evidence seized, were entitled to assert "automatic standing" to challenge the search and seizure under *Jones.* See *United States v. Salvucci,* 599 *F.*2d 1094, (1st Cir. 1979).

The Supreme Court reversed and remanded, overruling the *Jones* rule of "automatic standing." 448 *U.S.* at 86, 100 *S.Ct.* at

---

[6]This rule evolved from the *Jones* Court's recognition of the fact that where a defendant is charged with unlawful possession of the contraband seized, a special problem arises: the same proof of possession that would give him standing to challenge the search would also convict him of the possessory offense charged. 362 *U.S.* at 263, 80 *S.Ct.* at 732, 4 *L.Ed.*2d at 703. In order that the defendant in that situation might avoid the dilemma of gaining standing to assert a Fourth Amendment right only by relinquishing his Fifth Amendment privilege against self-incrimination, the Court established a rule of "automatic standing" in cases where an essential element of the crime charged is possession of the seized property at the time of the contested search. *Id.* See *Brown v. United States,* 411 *U.S.* 223, 93 *S.Ct.* 1565, 36 *L.Ed.* 2d 208 (1973). *Jones* held that in those cases in which "possession both convicts and confers standing," a defendant moving to suppress evidence as obtained in an unlawful search and seizure need not make "a preliminary showing of an interest in the premises searched or the property seized." 362 *U.S.* at 263, 80 *S.Ct.* at 732, 41 *L.Ed.*2d at 702. Rather, under *Jones* the trial court was to pass directly to a consideration of the merits of the suppression motion and determine the legality *vel non* of the challenged search.

2550, 65 *L.Ed.*2d at 624. The Court in *Salvucci* concluded that only a legitimate expectation of privacy in the premises searched is sufficient to confer standing, regardless of whether the defendant had a possessory interest in the items seized. The Court reasoned that the underlying reasons for the "automatic standing" rule had been completely eroded in the twenty years of jurisprudential development since the *Jones* decision. It stated that the "cornerstone" of *Jones*, the self-incrimination dilemma, by which defendants gained Fourth Amendment standing only at the risk of providing the prosecution with inculpatory statements as to possession of the contraband seized, had been eliminated by the Court's holding in *Simmons v. United States*, 390 *U.S.* 377, 88 *S.Ct.* 967, 19 *L.Ed.*2d 1247 (1968), that testimony given by a defendant in support of a motion to suppress was inadmissible as evidence of his guilt at trial. 448 *U.S.* at 89–90, 100 *S.Ct.* at 2551–52, 65 *L.Ed.*2d at 626–27.

In addition, the Court was not disturbed by the notion that without the *Jones* rule, the prosecution would be allowed the advantage of asserting contradictory positions: that the defendant possessed the contraband property for the purposes of proving criminal liability, but that he had insufficient possessory interest in the property for the purposes of defending the legality of the search and seizure. *Id.* The *Salvucci* Court stated flatly that "a prosecutor may simultaneously maintain that a defendant criminally possessed the seized goods, but was not subject to a Fourth Amendment deprivation, without legal contradiction." *Id.* at 90, 100 *S.Ct.* at 2552, 65 *L.Ed.*2d at 627. The Court reasoned that since its holdings in *Rakas* and *Salvucci* established that possession of seized property is not sufficient to confer Fourth Amendment standing, it was no longer true that the same possession both convicts and confers standing. *Id.*

*Salvucci*'s holding that possession of the property seized is not sufficient to confer standing even to defendants charged with possession of the seized property at the time of the search was fortified by the Court's decision in the companion case of *Rawlings v. Kentucky*, 448 *U.S.* 98, 100 *S.Ct.* 2556, 65 *L.Ed.*2d 633

(1980). In *Rawlings*, defendant was one of four visitors in a house searched by six police officers pursuant to a warrant. One of the visitors was ordered by the police to empty the contents of her purse onto a table. When the visitor complied, it was found that the contents included a substantial amount of various controlled substances, ownership of which was claimed immediately by defendant. A search of defendant's person revealed $4500 in cash and a knife in a sheath, whereupon he was arrested and charged with possession and possession with intent to distribute the controlled substances seized from the contents of the purse.

The Supreme Court upheld the denial of defendant's suppression motion and subsequent conviction, concluding that defendant had failed to show that he had a legitimate expectation of privacy in the purse of a casual acquaintance. Moreover, the *Rawlings* Court reiterated the view espoused in *Rakas* and *Salvucci* that even the assertion of ownership of the property seized is not sufficient to confer Fourth Amendment standing unless the defendant satisfies the burden of proving that he had a legitimate expectation of privacy in the place searched.

Taken together, the Supreme Court's decisions in *Rakas, Salvucci* and *Rawlings* make clear that under the federal law of search and seizure, standing to challenge the prosecutorial use of evidence obtained in violation of the Fourth Amendment is not enjoyed by a mere passenger in a searched automobile even if he alleges ownership of the property seized. See, *e.g., United States v. Whitfield*, 629 *F.*2d 136, 139 n. 4 (D.C.Cir.1980). In the context of the present case, it would appear that nothing short of ownership of, some possessory interest in, or control over the vehicle searched would be sufficient to confer standing on automobile passengers under *Rakas, Salvucci* and *Rawlings*, even if the passenger is charged with unlawfully possessing the seized property at the time of an unconstitutional search and seizure.

## III

Earlier this term we recognized that in the appropriate situation our State Constitution may independently furnish a basis for protecting personal rights when it is not clear that the guarantees of the federal Constitution would serve to grant that same level of protection. See *State v. Schmid*, 84 *N.J.* 535, 553–60 (1980). That this basic principle of American federalism confers upon this Court the power to afford the citizens of this State greater protection against unreasonable searches and seizures than may be required by the Supreme Court's interpretation of the Fourth Amendment is beyond question. *State v. Johnson*, 68 *N.J.* 349, 353 (1975); see *State v. Catania*, 85 *N.J.* 418, 436–39 (1981); *State v. Carpentieri*, 82 *N.J.* 546, 572–73 (1980) (Pashman, J., dissenting); *State v. Baker*, 81 *N.J.* 99, 112, 405 *A.2d* 368 (1979); *State v. Ercolano*, 79 *N.J.* 25, 49 (1979); *State v. Slockbower*, 79 *N.J.* 1, 4 & n. 2 (1979); *State v. Vinegra*, 73 *N.J.* 484, 506 (1977) (Hughes, C. J., dissenting); Brennan, *State Constitutions and the Protection of Individual Rights*, 90 *Harv.L.Rev.* 489, (1977).[7] Writing for this Court in *State v. Johnson, supra*, Justice Sullivan observed that although Article I, paragraph 7 of the New Jersey Constitution of 1947 is taken almost verbatim from the Fourth Amendment, "we have the right to construe our State constitutional provision [prohibiting unreasonable searches and seizures] in accordance with what we conceive to be its plain meaning." 68 *N.J.* at 353 n.2.

As indicated heretofore, *Rakas, Salvucci* and *Rawlings* deny Fourth Amendment standing to any movant who fails to demonstrate a reasonable expectation of privacy in the particular area searched, even where the movant is the owner or legitimate possessor of the property seized. See, *e.g., United States v.*

---

[7] In this article Justice Brennan emphasizes that "state courts cannot rest when they have afforded their citizens the full protections of the federal constitution. State constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law." 90 *Harv.L.Rev.* at 491.

*Medina-Verdugo*, 637 *F.*2d 649, 652 (9th Cir. 1980); *United States v. Goshorn*, 628 *F.*2d 697, 700 (1st Cir. 1980); *United States v. Dall*, 608 *F.*2d 910, 914 (1st Cir. 1979), *cert. den.*, 445 *U.S.* 918, 100 *S.Ct.* 1280, 63 *L.Ed.*2d 603 (1980).[8] Because we find that these recent decisions of the Supreme Court provide persons with inadequate protection against unreasonable searches and seizures, we respectfully part company with the Supreme Court's view of standing and construe Article I, paragraph 7 of our State Constitution to afford greater protection.

■ Adherence to the vague "legitimate expectation of privacy" standard, subject as it is to the potential for inconsistent and capricious application, will in many instances produce results contrary to commonly held and accepted expectations of privacy. See Allen & Schaeffer, *Great Expectations: Privacy Rights in Automobiles*, 34 *U.Miami L.Rev.* 99, 127 (1979). Moreover, we are concerned that the results thus attained will not infrequently run contrary to a fundamental principle rooted in Article I, paragraph 7 of the New Jersey Constitution. That paragraph protects "the right of the people to be secure in their persons,

---

[8]This result has been denounced by a four-Justice dissent in *Rakas, supra*, as a declaration of " 'open season' on automobiles." 439 *U.S.* at 157, 99 *S.Ct.* at 437, 58 *L.Ed.*2d at 409 (White, J., dissenting). Law enforcement officials are thereby invited "to engage in patently unreasonable searches every time an automobile contains more than one occupant." *Id.* at 168, 99 *S.Ct.* at 443, 58 *L.Ed.*2d at 417. It has been suggested that police may often be willing to risk suppression at the behest of some defendants in order to gain evidence usable against those without constitutional protection. *Id.* at 168–69 & n.23, 99 *S.Ct.* at 443 & n.23, 58 *L.Ed.*2d at 417 & n.23 (citing Ingber, *Procedure, Ceremony and Rhetoric: The Minimization of Ideological Conflict in Deviance Control*, 56 *B.U.L.Rev.* 266, 304–05 (1976); White & Greenspan, *Standing to Object to Search and Seizure*, 118 *U.Pa.L.Rev.* 333, 349, 365 (1970)). If indeed this is the invitation extended to law enforcement officials by *Rakas* and its progeny, then it would obviously be destructive of the time-honored principle that the primary purpose of the exclusionary rule is deterrence—"to compel respect for the constitutional guaranty [against unreasonable searches and seizures] in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 *U.S.* 206, 217, 80 *S.Ct.* 1437, 1444, 4 *L.Ed.*2d 1669, 1677 (1960). See *Mapp v. Ohio*, 367 *U.S.* 643, 656, 81 *S.Ct.* 1684, 1692, 6 *L.Ed.*2d 1081, 1090 (1961).

houses, papers *and effects*, against unreasonable searches and seizures * * *." (Emphasis added). Hence, a person's ownership of or possessory interest in personal property seized by law enforcement officials is quite sufficient to confer standing to claim that personal Fourth Amendment privacy rights have been violated. See *Rawlings v. Kentucky, supra,* 448 *U.S.* at 116–19, 100 *S.Ct.* at 2567–68, 65 *L.Ed.* at 649–51 (Marshall, J., dissenting). We find the reasoning of Justice Marshall in his dissent in *Rawlings, supra,* that the constitutional protection against unreasonable searches and seizures extends to people's "effects" as well as to their "persons" and "houses," more faithful to the authoritative precedents and policies underlying the law of searches and seizures,[9] and more consonant with our own interpretation of the plain meaning of Article 1, paragraph 7 of our State Constitution. See *State v. Ercolano, supra,* 79 *N.J.* at 49, 397 *A.2d* 1062; *State v. Johnson, supra,* 68 *N.J.* at 353, 346 *A.2d* 66.[10]

■ Legitimate expectations of privacy are those that flow from some connection with or relation to the place or property to be searched. A determination of "legitimacy" turns upon a nexus with the property searched or seized. Although the primary purpose of the prohibition against unreasonable searches is protection of privacy rather than property, nevertheless it serves the purposes of clarity to emphasize an accused's relationship to *property* rather than to attempt a definition of

---

[9]For example, in *United States v. Jeffers,* 342 *U.S.* 48, 53, 72 *S.Ct.* 93, 96, 96 *L.Ed.* 59, 65 (1951), defendant was granted standing to challenge an unlawful search of his aunt's hotel room based upon his property interest in the items seized, despite his lack of an interest in the premises searched. See *Jeffers v. United States,* 187 *F.2d* 498, 500–02 (D.C.Cir.1950).

[10]See *State v. Wade,* 89 *N.J.Super.* 139 (App.Div.1965), wherein the court cited *Jones* and *Jeffers* for the proposition that "an admitted owner of personal property found and seized by police in an illegal search of the premises or property of another has standing as a defendant to object to the use of such property against him notwithstanding he was not present and had no possessory interest in the premises searched." *Id.* at 149.

expectations in terms of the person. Therefore, rather than follow the amorphous "legitimate expectations of privacy in the area searched" standard as applied in *Rakas, Salvucci* and *Rawlings*, we retain the rule of standing traditionally applied in New Jersey, namely, that a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory or participatory interest in either the place searched or the property seized. *State v. Allen*, 113 *N.J.Super.* 245, 249 (App.Div.1970); *State v. LaDuca*, 89 *N.J.Super.* 159, 163 (App.Div.1965). See also *State v. Pohle*, 160 *N.J.Super.* 576, 584–85 (Law Div.1978), aff'd in part, rev'd on other grounds, 166 *N.J.Super.* 504, 508 (App.Div. 1979); *State v. Parker*, 153 *N.J.Super.* 480, 488 (App.Div.1977); *State v. Chaitkin*, 135 *N.J.Super.* 179, 188 (Cty.Ct.1975).

■ More significantly, in cases where the defendant is charged with an offense in which possession of the seized evidence at the time of the contested search is an essential element of guilt, we retain the "automatic standing" rule of *Jones v. United States, supra,* for purposes of that search under the state Constitution, despite the rejection of that rule by the Supreme Court in *Salvucci* and *Rawlings*. Mindful of our responsibility for making rules affecting the administration of criminal justice in the courts of this State, we find the Supreme Court's grounds for abandoning the *Jones* rule of standing unpersuasive. Rather, we believe that

[t]he automatic standing rule is a salutary one which protects the rights of defendants and eliminates the wasteful requirement of making a preliminary showing of standing in pretrial proceedings involving possessory offenses, where the charge itself alleges an interest sufficient to support a Fourth Amendment claim. [*Salvucci, supra,* 448 *U.S.* at 97, 100 *S.Ct.* at 2556, 65 *L.Ed.2d* at 632 (Marshall, J., dissenting).]

■ Accordingly, when the charge against defendant includes an allegation of a possessory interest in property seized such as would confer standing, under the traditional test we retain today, to object to prosecutorial use of evidence obtained in an unlawful search and seizure, the defendant has automatic standing to bring a suppression motion under *R.* 3:5–7, as "a

person claiming to be aggrieved by an unlawful search and seizure and having reasonable grounds to believe that the evidence attained may be used against him in a penal proceeding.[11] We add a word of caution to trial courts that when ruling on suppression motions in which standing may be in issue under federal and state claims, the court should make explicit findings and legal conclusions as to standing under both the Federal and State Constitutions.[12]

In the present case application of the *Jones* rule of automatic standing as to all four defendants is appropriate. They were charged with unlawful possession of the three firearms obtained by Detectives Fenech and Schmidig as a result of the challenged search and seizure of the automobile they occupied. See *State v. Humphreys,* 54 *N.J.* 406 (1969), in which this Court, in upholding the constitutionality of *N.J.S.A.* 2A:151–7 making the presence of a firearm in a vehicle presumptive evidence of possession by all occupants, observed that

> [a]lthough it is no doubt true that more than one individual can "possess" an item within the meaning of *N.J.S.A.* 2A:151–41, even if one of [appellant's] two codefendants were in exclusive possession of the weapon, concealed on his person or in the automobile, [appellant] would still share criminal responsibility for the possession of the weapon if it could be reasonably inferred that he knew of the existence of the gun and was a knowing participant in the criminal mission.

See *Ulster County Court v. Allen,* 442 *U.S.* 140, 99 *S.Ct.* 2213, 60 *L.Ed.2d* 777 (1979), holding not violative of due process the application of a New York statutory presumption similar to that found in *N.J.S.A.* 2A:151–7.

---

[11]For the sake of clarification, we point out that our retention of *Jones*'s automatic standing rule in cases involving possessory offenses is in no way meant to suggest that we also lend credence to the "target" theory or the "legitimately on the premises" theory of Fourth Amendment standing discussed in *Jones.*

[12]We recognize, of course, that any determination of who has standing to assert federal constitutional rights must be made in keeping with federal law. See *Cramp v. Board of Public Instruction,* 368 *U.S.* 278, 282, 82 *S.Ct.* 275, 278, 7 *L.Ed.2d* 285, 289 (1961); *United States v. Raines,* 362 *U.S.* 17, 23 n.3, 80 *S.Ct.* 519, 524 n.3, 4 *L.Ed.2d* 524, 530 n.3 (1960).

The point for our present purposes is that at the time defendants made their motion to suppress, all the State had to prove to convict under *N.J.S.A.* 2A:151–41 was that defendants carried or possessed the seized weapons in an automobile without a permit. Therefore, because possession of the seized property is an essential element of the offense with which defendants were charged, the State is precluded from denying that defendants have the requisite possessory interest in the seized property to challenge the admission of that evidence.

## V

 Turning to the merits of defendants' challenge to the search, it is well settled that any warrantless search is *prima facie* invalid and gains validity only if it comes within one of the specific exceptions created by the Supreme Court. See, *e. g., State v. Young,* 87 *N.J.* at 132, 141–42,; *State v. Welsh,* 84 *N.J.* 346, 352 (1980); *State v. Patino,* 83 *N.J.* 1, 7 (1980). The requirement that a search warrant be obtained before evidence may be seized is not lightly to be dispensed with, and the burden is on the State, as the party seeking to validate a warrantless search, to bring it within one of those recognized exceptions. *Welsh, supra,* 84 *N.J.* at 352; *Patino, supra,* 83 *N.J.* at 7; *State v. Sims,* 75 *N.J.* 337, 352 (1978).

In the instant case the State claims that the "automobile exception to the Warrant Clause, *Carroll v. United States,* 267 *U.S.* 132, 45 *S.Ct.* 280, 69 *L.Ed.* 543 (1925), validates the warrantless search that led to the seizure of the two handguns, or alternatively that the search was incident to a lawful arrest for possession of the sawed-off shotgun, *Chimel v. California,* 395 *U.S.* 752, 89 *S.Ct.* 2034, 23 *L.Ed.*2d 685, *reh. den.,* 396 *U.S.* 869, 90 *S.Ct.* 36, 24 *L.Ed.*2d 124 (1969).

The automobile exception, first articulated in *Carroll v. United States, supra,* holds a search warrant unnecessary when the police stop an automobile on the highway and have probable cause to believe that it contains contraband or evidence of a

crime. See *Colorado v. Bannister*, 449 *U.S.* 1, 2, 101 *S.Ct.* 42, 43, 66 *L.Ed.*2d 1, 3 (1980); *Arkansas v. Sanders*, 442 *U.S.* 753, 760, 99 *S.Ct.* 2586, 2591, 61 *L.Ed.*2d 235, 242 (1979). The primary rationale for this exception lies in the exigent circumstances created by the inherent mobility of vehicles that often makes it impracticable to obtain a warrant. See *Chambers v. Maroney*, 399 *U.S.* 42, 51, 90 *S.Ct.* 1975, 1981, 26 *L.Ed.*2d 419, 428 (1970). While "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears," *Coolidge v. New Hampshire*, 403 *U.S.* 443, 461–62, 91 *S.Ct.* 2022, 2035, 29 *L.Ed.*2d 564, 580 (1971), the *Carroll* exception is further supported by the somewhat diminished expectation of privacy surrounding automobiles, "which arises from the facts that a car is used for transportation and not as a residence or a repository of personal effects, that a car's occupants and contents travel in plain view, and that automobiles are necessarily highly regulated by government." *Robbins v. California*, 453 *U.S.* 420, 101 *S.Ct.* 2841, 69 *L.Ed.*2d 744 (1981). See *United States v. Chadwick*, 433 *U.S.* 1, 12–13, 97 *S.Ct.* 2476, 2484, 53 *L.Ed.*2d 538, 549 (1977); *Cardwell v. Lewis*, 417 *U.S.* 583, 590, 94 *S.Ct.* 2464, 2469, 41 *L.Ed.*2d 325, 335 (1974); *Cady v. Dombrowski*, 413 *U.S.* 433, 441–43, 93 *S.Ct.* 2523, 2528–29, 37 *L.Ed.*2d 706, 714 (1973).

As stated by the Supreme Court in *Chambers, supra*, probable cause is the minimal requirement for a constitutionally reasonable search of a readily movable vehicle stopped on the highway. 399 *U.S.* at 51, 90 *S.Ct.* at 1981, 26 *L.Ed.*2d at 438. See *Patino, supra*, 83 *N.J.* at 10, *State v. Waltz*, 61 *N.J.* 83, 87 (1980). "Probable cause is more than bare suspicion but less than legal evidence necessary to convict." *Patino, supra*, 83 *N.J.* at 10. It has been defined by this Court as a "well grounded suspicion" that a crime has been or is being committed. *Id.; State v. Waltz, supra*, 61 *N.J.* at 87; *State v. Burnett*, 42 *N.J.* 377, 387 (1964).

■ We find that under the circumstances of this case the detectives had probable cause to conduct the search of the passenger compartment that revealed the two handguns.[13] The presence of the shotgun shells in the glove compartment and the sawed-off shotgun under the front passenger seat, coupled with defendants' furtive and unusual movements in the back seat before the vehicle was stopped, afforded a more than adequate basis for a "well grounded suspicion" that defendants had secreted other weapons in the passenger compartment of the vehicle. See *State v. Waltz, supra,* 61 *N.J.* at 87–88, *State v. Sessions,* 172 *N.J.Super.* 558, 565–66 (App.Div.1980). See also *People v. Martinez,* 118 *Cal.App.3d* 624, 173 *Cal.Rptr.* 554 (Ct. App.1981).[14]

Defendants argue that probable cause notwithstanding, a warrant was necessary for further search of the passenger compartment, for once they were removed from the vehicle and arrested, the car was not readily movable nor was it impracticable to secure a warrant. The Appellate Division agreed, holding that our decision in *State v. Ercolano, supra,* compels the conclusion that once the occupants are removed from the vehicle and placed under custodial arrest, there are no longer any exigent or exceptional circumstances justifying the warrantless search of the vehicle. The court below held that under these circumstances, *Ercolano* requires the police to seize and temporarily retain custody of the vehicle for the time necessary to secure a warrant from a neutral magistrate rather than conduct an immediate search at the scene of the stop.

---

[13]The detectives had the right to stop the speeding vehicle. *State v. Waltz, supra,* 61 *N.J.* at 87–88. As noted previously, the warrantless search that initially revealed the shotgun shells and the sawed-off shotgun was found by the Appellate Division to be valid and this Court denied further review as to that search. Therefore, that search is valid.

[14]It bears emphasis at this point that the search in this case was for further weapons in the passenger compartment of the automobile, not for drugs or other contraband in the trunk. See *Patino, supra,* 83 *N.J.* at 14–15.

We disagree. While we are constrained to acknowledge that *Ercolano* contains some broad dictum concerning the level of exigency required by the automobile exception, see 79 *N.J.* at 41–49, our decision in that case in no way marks a departure from the established analysis of the exception as recognized in *Carroll* and *Chambers*. Because of its inherent mobility, a motor vehicle that has been stopped on a highway may be searched without a warrant when probable cause exists to believe that the vehicle contains articles that the police are entitled to seize. *Chambers v. Maroney, supra,* 399 *U.S.* at 48, 90 *S.Ct.* at 1979, 26 *L.Ed.2d* at 426; *State v. Waltz, supra,* 61 *N.J.* at 88. *Chambers v. Maroney* emphasizes that there is "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." 399 *U.S.* at 52, 90 *S.Ct.* at 1981, 26 *L.Ed.2d* at 428. Therefore, once the defendants were arrested on weapons charges, and given the probable cause to search the passenger compartment of the vehicle for further weapons, *Chambers* provides that it was equally permissible for the police either to conduct an immediate search at the place of the stop or to seize the vehicle and remove it to a police station before conducting the search. See *State v. Hannah,* 125 *N.J.Super.* 290, 295 (App.Div.1973).

Finally, defendants' argument and the Appellate Division's holding misconstrue the level of "exigent circumstances" that need be shown in order for the probable cause determination of the police to suffice as authorization for the search. According to *Chambers, supra,* the exigent circumstances that justify the invocation of the automobile exception are the unforeseeability and spontaneity of the circumstances giving rise to probable cause, 399 *U.S.* at 50–51, 90 *S.Ct.* at 1980–81, 26 *L.Ed.* 2d at 428, and the inherent mobility of the automobile stopped on the highway. *Id.* at 51, 90 *S.Ct.* at 1981, 26 *L.Ed.2d* at 428. Because the exigency in *Ercolano* is distinguishable from that in

this case, the Appellate Division's reliance on *Ercolano* was misplaced. In *Ercolano*, we expressly recognized that we were not confronted with "a situation wherein the police have seized a moving car as in *Carroll* and *Chambers*, or one readily movable." 79 *N.J.* at 46. In addition, inasmuch as the police had probable cause to search the defendant's vehicle in *Ercolano* well before they encountered it on the street while executing a search warrant for an accomplice's apartment, our decision there expressly states, paraphrasing *Chambers*, that "the circumstances giving rise to probable cause to search this car were *not* unforeseeable." 79 *N.J.* at 47 (emphasis in original). In the instant case, the defendants' speeding vehicle was stopped on the highway for reasons wholly unconnected with the reason for the subsequent seizure. See *Colorado v. Bannister*, 449 *U.S.* 1, 3 n.2, 101 *S.Ct.* 42, 43 n.2, 66 *L.Ed.2d* 1, 4 n.2 (1980). The unanticipated circumstances that gave rise to probable cause to search for concealed weapons developed swiftly. Given that the detectives had probable cause to believe that dangerous weapons were concealed in the passenger compartment of the vehicle, the vehicle's inherent mobility and the potential danger posed by the presence of weapons were sufficient exigent circumstances to justify a warrantless search. See *People v. Martinez, supra*, 118 *Cal.App.3d* at 634–35, 173 *Cal.Rptr.* at 560.

These exigent circumstances do not dissipate simply because the particular occupants of the vehicle may have been removed from the car, arrested, or otherwise restricted in their freedom of movement. See *State v. Waltz, supra; State v. Sessions, supra*, 172 *N.J.Super.* at 566. See also *State v. Kahlon*, 172 *N.J.Super.* 331, 340 (App.Div.1980). The characterization of ready mobility of the vehicle as envisioned by *Chambers* is applicable to the vehicle itself, and the car is readily movable until such time as it is seized, removed from the scene and securely impounded by the police. Until then it is potentially accessible to third persons who might move or damage it or remove or destroy evidence contained in it. Under *Chambers*, however, when there is probable cause to conduct an immediate

search at the scene of the stop, the police are not required to delay the search by seizing and impounding the vehicle pending review of that probable cause determination by a magistrate. "[T]here is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." *Chambers, supra,* 399 *U.S.* at 52, 90 *S.Ct.* at 1981, 26 *L.Ed.2d* at 49.

Accordingly, the search of the vehicle that revealed the two handguns was justified as within the automobile exception to the warrant requirement.[15] The weapons, therefore, were improperly suppressed.

Reversed and remanded.

SCHREIBER, J., concurring.

The majority has unnecessarily interpreted New Jersey's constitutional search and seizure provision so that it serves "to afford a windfall to defendants whose Fourth Amendment rights have *not* been violated." *United States v. Salvucci,* 448

---

[15]Because of this disposition of the case, there is no need to consider whether the search of the vehicle and the seizure of the handguns were justified as being incident to a lawful arrest, *Chimel v. California, supra.* In *State v. Welsh, supra,* we reaffirmed that the proper scope of a search incident to an arrest is limited to the person of the arrestee and the area from within which he might gain possession of a weapon or destructible evidence. In *Welsh,* we held that once the occupant has been removed from the vehicle, placed under custodial arrest and seated in a police car, there is no danger that the arrestee might reach into his own vehicle to gain possession of a weapon or destructible evidence. 84 *N.J.* at 355. Therefore, we concluded that the search in *Welsh* was not properly incident to an arrest under the *Chimel* standard. *Id.* It would appear that this result would not be the same were we to apply the *Chimel* analysis of the Supreme Court recently announced in *New York v. Belton,* 453 *U.S.* 454, 101 *S.Ct.* 2860, 69 *L.Ed.2d* 744 (1981). However, given our validation of the search herein on the separate and independent basis of the automobile exception, we leave to future consideration the question of the continued viability of our analysis of the scope of the *Chimel* exception as expressed in *Welsh.*

*U.S.* 83, 95, 100 *S.Ct.* 2547, 2554, 65 *L.Ed.*2d 619, 630 (1980).[1] The finding in this case that there was probable cause for the search obviated any need to create this windfall and part company with the Supreme Court, since, irrespective of defendants' rights to raise the issue of the propriety of the search and seizure, the majority concludes that defendants' suppression motions should have been denied. Indeed, to accomplish its result, the majority has nullified its holding made about a year ago that standing depends upon "a legitimate expectation of privacy in the property or premises involved." *State v. Williams*, 84 *N.J.* 217 (1980). Moreover, no sound reason has been advanced why the New Jersey constitutional provision that has been copied verbatim from the Fourth Amendment should be interpreted differently from its parental counterpart.[2]

It has been well-settled that generally a person may not assert constitutional rights belonging to others. The Supreme Court has frequently articulated the rule that "[o]rdinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party." *Barrows v. Jackson*, 346 *U.S.* 249, 255, 73 *S.Ct.* 1031, 1034, 97 *L.Ed.* 1586, 1594 (1953). This principle would ordinarily be applicable to the constitutional search and seizure provision, whose core is a person's right to privacy. Professor LaFave asserts the rule in this fashion:

> The fundamental inquiry regarding standing is that articulated in *Mancusi* [*v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968)]: whether the conduct which the defendant wants to put in issue involved an intrusion into *his* reasonable expectation of privacy. [3 *LaFave, Search and Seizure*, § 11.3 at 544 (1978)]

*Alderman v. United States*, 394 *U.S.* 165, 174, 89 *S.Ct.* 961, 967, 22 *L.Ed.*2d 176, 187 (1969); *Brown v. United States*, 411 *U.S.* 223, 230, 93 *S.Ct.* 1565, 1570, 36 *L.Ed.*2d 208, 214 (1973); *Sim-*

---

[1] This court has never held, as it now does, that the assertion of any proprietary, possessory or participatory interest in either the place searched or property seized is sufficient to invoke the Fourth Amendment.

[2] This is not a situation of adhering to the plain language of the State Constitution. See *State v. Johnson*, 68 *N.J.* 349, 353 (1975).

mons v. *United States,* 390 *U.S.* 377, 389, 88 *S.Ct.* 967, 973, 19 *L.Ed.2d* 1247, 1256 (1968).

An exception to the general rule developed in the search and seizure field because of the implications of a defendant's Fifth Amendment right against self-incrimination. A defendant charged with the crime of possessing some contraband would have to assert possession to prevail on a claim that the search and seizure were unlawful. The defendant would in effect be compelled to incriminate himself if he sought to invoke the right of privacy under the Fourth Amendment. Under those circumstances, the Supreme Court held that "standing" automatically existed when a possessory crime was charged with respect to the seized property. *Jones v. United States,* 362 *U.S.* 257, 263, 80 *S.Ct.* 725, 732, 4 *L.Ed.2d* 697, 703 (1960).

The reason for the exception was later eliminated when it was held that the defendant's testimony on the motion to suppress was inadmissible at the subsequent trial. *Simmons v. United States, supra.* The defendant could then testify without endangering his Fifth Amendment protection against self-incrimination. Accordingly, the mere assertion of some possessory interest in the object seized does not support or justify a defendant's claim that a search and seizure were unlawful. See *United States v. Salvucci, supra,* 448 *U.S.* at 87–89, 100 *S.Ct.* at 2550–51, 65 *L.Ed.2d* at 625–26. The majority adheres to the outmoded possessory exception despite the fact that suppression hearing procedures make the exception unnecessary to protect the defendant. Because of the majority's thesis, I should predict that almost every defendant will question every search of property whenever charged with a possessory offense involving that property. At trial the defendant then will take the opposite position, denying his interest in the property. .

The majority also rejects the geographical aspect of privacy for it would extend the zone of privacy into locations where privacy does not legitimately exist. It seems to abhor the thought that a defendant who is the owner of the seized

property cannot assert a Fourth Amendment violation where there is no expectation of privacy. Yet is this not a reasonable proposition? For example, if contraband is left in a public place, the owner cannot reasonably claim an expectation of privacy. So, too, if contraband is placed in an automobile, as in this case, an expectation of privacy must be substantially reduced. A person cannot reasonably contemplate that property kept in his automobile will have the same privacy as in a home. This proposition is self-evident. The motor vehicle is present on public streets, in public parking places, in public garages and in service stations; it is subject to extensive governmental regulation and inspection. The circumstance of where a search is made may have a direct bearing on its reasonableness.

No sound policy reasons have been advanced to demonstrate why New Jersey should not follow the lead of the Supreme Court in its interpretation of the Fourth Amendment. The New Jersey search and seizure clause first appeared in the Constitution of 1844, Art. I, par. 6, tracing the language of the Fourth Amendment. The framers' intent was to mirror the provision embodied in the federal constitution that centered on the desire to protect a zone of privacy. This concept of privacy is not some uncertain principle to be thrust aside as too "vague", *ante* at 226. Its vitality has been enriched and enhanced by reference to several provisions in the federal constitution. *Griswold v. Connecticut*, 381 *U.S.* 479, 484, 85 *S.Ct.* 1678, 1691, 14 *L.Ed.*2d 510, 514–15 (1965). It is a standard that has been accepted by Justices Marshall and Brennan whose dissent and reasoning in *Rawlings v. Kentucky*, 448 *U.S.* 98, 100 *S.Ct.* 2556, 65 *L.Ed.*2d 633 (1980), is embraced today by the majority. *Cf. Katz v. United States*, 389 *U.S.* 347, 352, 88 *S.Ct.* 507, 511, 19 *L.Ed.*2d 576, 582 (eavesdropping with an electronic listening device affixed to public telephone booth held violative of Fourth Amendment since 'individual "is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world"). The right of privacy and a reasonable expectation of

that right serve as "bright" guidelines of the Fourth Amendment.[3]

The focus of the exclusionary rule is deterrence of police misconduct. This judicial sanction is hinged not only upon whether there has been a Fourth Amendment violation, but on whether the police activity has been so egregious as to warrant suppressing evidence and in many cases freeing the guilty. In resolving questions of this nature, we must consider the individual's right to live free from criminal attack in his house, at his work and on the streets. *State v. Davis*, 50 *N.J.* 16 (1967), *cert. den.* 389 *U.S.* 1054, 88 *S.Ct.* 805, 19 *L.Ed.*2d 852 (1968). Chief Justice Weintraub aptly observed that this "primary individual right demands that government be equal to the reason for its being—the protection of the individual citizen. . . ." *State v. Boykins*, 50 *N.J.* 73, 81 (1967). A court should keep in mind that the police have a preventive role as well as the duty to deal with crimes already committed. *State v. Dilley*, 49 *N.J.* 460 (1967). The majority has ignored these interests in rejecting the Supreme Court's analysis of the Fourth Amendment, thereby imposing "substantial burdens on law enforcement without vindicating any significant values of privacy." *Robbins v. California*, 453 *U.S.* 420, 101 *S.Ct.* 2841, 69 *L.Ed.*2d 744 (1981) (Powell, J., concurring).

The bottom line of the majority's holding will be to suppress material, competent and credible evidence, even though a reasonable expectation of privacy does not exist, thereby inhibiting the jury's truth-seeking process and enabling the guilty to go free. See *United States v. Ceccolini*, 435 *U.S.* 268, 275, 98 *S.Ct.* 1054, 1059, 55 *L.Ed.*2d 268, 276 (1978); *State v. Ingenito*, 87 *N.J.*

---

[3]The majority fails to explain how the test of "a proprietary, possessory or participatory interest", *ante* at 228, is a less "vague" or "amorphous" standard. The key to the problem is the expectation of privacy. The proper frame of reference therefore must commence and end with the individual's reasonable expectation with respect to the concealment or confidentiality of the property.

204, 211 (1981) (holding that it is "important that the evidence be as full and complete as possible in order to aid the search for truth and assure the just and correct result").

Lastly, the majority misperceives the tests to be applied in determining the existence of an expectation of privacy. Substantively it was necessary for the defendants to show that they had a reasonable expectation of privacy with respect to the loaded revolvers *after* they left the car. See *Rakas v. Illinois*, 439 *U.S.* 128, 99 *S.Ct.* 421, 58 *L.Ed.2d* 387 (1978) [4] (holding under similar circumstances that defendants made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they had been passengers). Whether there is a reasonable expectation of privacy calls for an objective evaluation. Have the search and seizure infringed upon an interest of the defendant that the Fourth Amendment was designed to protect? Would it be reasonable under the circumstances to contemplate privacy? If not, there can be no Fourth Amendment violation. This analysis is to be distinguished from a subjective probe of the defendant's belief. *See Katz v. United States,* 389 *U.S.* at 361, 88 *S.Ct.* at 516, 19 *L.Ed.2d* at 588 (Harlan, J., concurring).[5] Did he contemplate that the property would not be seen or discovered? The defendant must satisfy both the objective and subjective criteria of the expectation of privacy.

The facts in this case are illustrative. The vehicle driven by Alston was pursued and stopped by the police for speeding. When Alston opened the glove compartment in search of his

---

[4]In *State v. Williams*, this Court expressly adopted and approved the reasoning of *Rakas v. Illinois* and held that the "test is whether a defendant had a legitimate expectation of privacy in the property or premises involved." 84 *N.J.* at 222.

[5]Moreover, standing under state law involves a subjective test since "the litigant's concern with the subject matter evidence[s] a sufficient stake and real adverseness." *Crescent Park Tenants Ass'n v. Realty Equities Corp.*, 58 *N.J.* 98, 107 (1971).

vehicular documents, some shotgun shells were exposed. When it was discovered that Alston's driver's license had been revoked, the police ordered the four occupants to get out of the car. They were patted down. The shells and the sawed-off shotgun that was partially in plain view were retrieved. The four defendants were placed under arrest and *then* the search revealed the two loaded revolvers. The defendants do not question the constitutionality of stopping the vehicle or directing them to get out. They offered *no* evidence demonstrating that they had any privacy rights in the loaded revolvers by virtue of location or possession. Thus there was no showing either from an objective or subjective viewpoint of an expectation of privacy.

Since the majority holds that there was probable cause for the search and seizure, I join in the judgment that the evidence, the two loaded revolvers, was improperly suppressed. However, I cannot in good conscience agree with its impairment of the ethics of responsibility.

SCHREIBER, J., concurring in the result.

*For reversal and remandment*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance*—None.