JUSTICE ALBIN,
dissenting.
Today’s decision weakens more than three decades of this Court’s standing jurisprudence under Article 1, Paragraph 7 of the *241 New Jersey Constitution. Before today, if a person had a possessory, proprietary, or participatory interest in a place called home, that person had standing to object to an unlawful search of the premises and that person’s reasonable expectation of privacy would not be an issue. Now, in disregard of the precise dictates of this Court’s decisions in State v. Alston, 88 N.J. 211, 227, 440 A.2d 1311 (1981) and State v. Johnson, 193 N.J. 528, 546, 940 A.2d 1185 (2008), and our general standing jurisprudence, the majority insists that even when a defendant has standing to object to a search of his home, the court must determine whether he had a reasonable expectation of privacy in the premises. See op. at 233-34, 78 A.3d at 566.
In Alston, supra, and Johnson, supra, we rejected the notion that a defendant with standing to object to a search under state law must clear “another layer of standing” based in federal jurisprudence — that is, have a court find that he had a reasonable expectation of privacy. Johnson, supra, 193 N.J. at 546, 940 A.2d 1185. The majority does here exactly what we said we would not do in Alston and Johnson. For the first time, this Court finds that a defendant has standing — a possessory or proprietary interest in the place searched — only to declare that the defendant has no reasonable expectation of privacy in the place searched. Not only does this formulation contravene our case law, but it could confound practitioners and judges if expanded beyond the novel scenario in this case. Because this departure from our law is unwarranted, I respectfully dissent.
I.
Defendant Gene Hinton lived at 130 Dayton Street, Apartment 8K, in Newark for six years before the police searched his apartment on April 13, 2009. Hinton’s mother, Essie, who died on March 14, 2009, was the leaseholder of the apartment. Although Essie’s name was the only one on the lease, it seems that both the building superintendent and the building manager knew that Hinton resided with his mother. Arguably, the New Jersey Anti- *242 Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, provided Hinton with a basis to remain on the premises, even after his mother’s death. See Maglies v. Estate of Guy, 193 N.J. 108, 112, 936 A.2d 414 (2007) (prohibiting “the causeless eviction of a daughter, after the death of her mother, where the landlord consented to the daughter’s residence and where the daughter’s income factored into the family contribution and federal voucher subsidy paid to the landlord”).
Apparently unaware of Essie’s death, the landlord, the Newark Housing Authority, initiated an eviction action for nonpayment of rent. On March 31, 2009, a Superior Court judge issued a warrant directing a Special Civil Part Officer to remove the tenant — Essie—and her property from the premises. On April 6, the Special Civil Part Officer placed the warrant of removal under the door of the apartment. The warrant gave “Ms. Hinton” 72 hours to vacate the apartment or seek judicial relief.
Under the New Jersey Anti-Eviction Act, the “Special Civil Part shall retain jurisdiction for a period of 10 days subsequent to the actual execution of the warrant for possession for the purpose of hearing applications by the tenant for lawful relief.” N.J.S.A. 2A:42-10.16(e). Here, the Special Civil Part Officer executed the removal on April 13 when he took account of the property in the apartment and changed the lock on the door. Hinton had ten days from that point to seek judicial relief from the lockout.
As he was conducting the lockout, the Special Civil Part Officer observed what he believed to be illegal drugs in a bedroom. He properly reported his observations to the Newark Police Department. No one disputes that those observations provided probable cause to conduct a search. The only question is whether Hinton has the right to challenge the warrantless entry of the apartment by Newark police officers.
The majority concedes that Hinton has standing to challenge the search — that is, he has a possessory, proprietary, or participatory interest in the apartment. Nevertheless, the majority contends that Hinton did not have a reasonable expectation of privacy *243 in the premises. The majority imposes an extra layer of standing — a reasonable expectation of privacy analysis — when we have instructed courts not to do so. That is clear from the seminal case guiding our standing jurisprudence, State v. Alston, supra, to which I now turn.
II.
A.
In State v. Alston, the Court articulated the governing principles for standing in cases in which a defendant claims a search or seizure violates Article 1, paragraph 7 of the New Jersey State Constitution. In doing so, this Court parted with the United States Supreme Court’s newly minted standing jurisprudence in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), jurisprudence which requires a person to have a reasonable expectation of privacy in the place searched or the thing seized to make a challenge under the Fourth Amendment. See Alston, supra, 88 N.J. at 226, 440 A.2d 1311. In Alston, we specifically rejected “the amorphous ‘legitimate expectations of privacy in the area searched’ standard as applied in Raleas, Salvucci and Rawlings,”[1] and “retain[ed] the rule of standing traditionally applied in New Jersey, namely, that a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory or participatory interest in either the place searched or the property seized.” Id. at 228, 440 A.2d 1311. The Court came to this conclusion because this rule of standing is “more consonant with our own interpretation of the plain meaning of Article 1, paragraph 7 of our State Constitution.” Id. at 227, 440 A.2d 1311.
*244 “Following Alston, our courts have consistently applied the automatic standing rule to defendants charged with possessory offenses, regardless of whether they had an expectation of privacy in the area searched.” Johnson, supra, 193 N.J. at 545, 940 A.2d 1185 (emphasis added). In Johnson, we gave examples, such as State v. Miller, 342 N.J.Super. 474, 478, 777 A.2d 348 (App.Div. 2001), in which the defendant had standing to challenge the search of a home where he was visiting but where he did not reside, and State v. De La Paz, 337 N.J.Super. 181, 193-95, 766 A.2d 820 (App.Div.), certif. denied, 168 N.J. 295, 773 A.2d 1158 (2001), in which the defendant had standing to challenge the warrantless entry of a home where he was a guest. Johnson, supra, 193 N.J. at 545, 940 A.2d 1185.
In Johnson, the State argued, as it does here, that “without having a reasonable expectation of privacy in the thing searched or item seized, defendant cannot make out a[n] ... Article I, Paragraph 7 violation.” Id. at 546, 940 A.2d 1185. We rejected that argument. Ibid. We refused to “placet] another layer of standing — [‘a reasonable expectation of privacy’ analysis] — on top of our automatic standing rule.” Ibid. We made crystal clear that “we do not use a reasonable expectation of privacy analysis for standing purposes in criminal cases” — with one caveat. Id. at 547, 940 A.2d 1185. We recognized in Johnson that in novel cases we would have to “determine whether an individual possesses a substantive right of privacy in a class of objects or a general place.” Ibid. (emphasis added). For example, by determining that people have a reasonable expectation of privacy in their bank records, see State v. McAllister, 184 N.J. 17, 32-33, 875 A.2d 866 (2005), we signaled that our standing jurisprudence will apply to those records. However, there is nothing novel about the constitutional protections afforded to the home. “[T]raditional notions of standing” apply to the home, and therefore the question here is whether Hinton had a possessory, proprietary, or participatory interest in the apartment searched. See Johnson, supra, 193 N.J. at 547, 940 A.2d 1185.
*245 B.
The majority is mistaken in suggesting that, because Hinton is charged with a possessory offense, only principles of automatic standing apply in this case. Hinton had the right to assert that he had general standing to object to the search of his apartment. See generally 32 New Jersey Practice, Criminal Practice and Procedure § 16:33 (Leonard N. Arnold) (2011). At the motion to suppress hearing, no one questioned whether Hinton had standing to challenge the search. No one questioned whether he had a reasonable expectation of privacy in the premises. The trial court apparently accepted that Hinton had standing and determined that the Newark police officers had a constitutional basis to conduct a warrantless search of the apartment. This Court has never before found that a defendant had standing to object to the search of a place and then turned to whether that defendant had a reasonable expectation of privacy in the place searched.
The majority refers to cases of a “transient user” and a “transient squatter” in abandoned buildings, op. at 237-38, 78 A.3d at 568-69,— cases in no way comparable to the present one in which a son lived with his mother in an apartment for six years with the almost certain knowledge of the building superintendent. Perhaps more significantly, the majority ignores that this Court recently said that “in a challenge to a search or seizure,” the “ ‘reasonable expectation of privacy’ standard” is not the standard when determining “whether property is abandoned.” Johnson, supra, 193 N.J. at 549 n. 5, 940 A.2d 1185.
In overruling the Appellate Division and denying Hinton’s motion to suppress, the majority discards core principles that guide our automatic standing jurisprudence. The majority has forgotten that “[o]ur possessory, proprietary and participatory standing analysis not only incorporates the notion of a reasonable expectation of privacy, but also advances other important state interests.” Ibid. One of those interests is that “by allowing a defendant broader standing to challenge evidence derived from unreasonable searches and seizures under our State Constitution, we increase *246 the privacy rights of all New Jersey’s citizens and encourage law enforcement officials to honor fundamental constitutional principles.” Ibid. (citing Alston, supra, 88 N.J. at 226 n. 8, 440 A.2d 1311).
These juridical principles are overlooked in the majority opinion.
III.
The police officers in this case searched an apartment without a warrant and without ever seeking the consent of the owner or leaseholder of that dwelling. They did not even seek out an agent of the Newark Housing Authority for authorization to breach the threshold of Hinton’s home. No one suggests that the officers had exigent circumstances to justify the warrantless search in this case. The real question is whether Hinton had a possessory, proprietary, or participatory interest in the apartment — and in the property of that apartment — that allows him to challenge the search. He was not a transient guest or visitor but a resident of the apartment for six years, and he was charged with a possessory offense, which ordinarily triggers automatic standing. See Alston, supra, 88 N.J. at 228, 440 A.2d 1311. Even after the Special Civil Part Officer executed the warrant of removal and changed the locks on the apartment, for a period of ten days, Hinton had a statutory right to seek judicial relief. N.J.S.A. 2A:42-10.16(e). Hinton therefore retained a possessory or proprietary interest, and even a reasonable expectation of privacy, in his home. Whether under our traditional standing principles or under the ones now created by the majority, Hinton had a right to challenge the search in this case.
IV.
In weakening the standing jurisprudence for searches and seizures under Article 1, Paragraph 7 of our State Constitution in the case of Gene Hinton, the majority takes a step toward eroding “the privacy rights of all New Jersey’s citizens” and forgoes *247 sending a signal to “encourage law enforcement officials to honor fundamental constitutional principles.” Johnson, supra, 193 N.J. at 543, 940 A.2d 1185. Although the majority’s misreading of our standing jurisprudence could sow confusion in the ranks of our trial courts, there is hope that the damage done here will be limited to the “unusual” facts of this ease, which the majority characterizes as “novel.” Op. at 236, 78 A.3d at 567-68.
For the reasons expressed, I respectfully dissent.
For reversal and remandment — Chief Justice RABNER, Justices LaVECCHIA, HOENS and PATTERSON — 4.
For affirmance — Justice ALBIN and Judge RODRÍGUEZ (temporarily assigned) — 2.
Not participating — Judge CUFF (temporarily assigned).

 Alston, supra, uses the terms "reasonable” and "legitimate” expectation of privacy interchangeably. See, e.g., 88 N.J. at 218, 440 A.2d 1311.