**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4281-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KAREEM T. TILLERY, a/k/a
KAREEM JONES, KAREEM J.
TILLERY, KARIEM A. TILLERY,
and KAREEM TILLERY JONES,

     Defendant-Appellant.

_____

Submitted April 30, 2019 – Decided June 5, 2019

Before Judges Yannotti and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-06-0497.

Joseph E. Krakora, Public Defender, attorney for appellant (Jay L. Wilensky and Cody Tyler Mason, Assistant Deputy Public Defenders, of counsel and on the briefs).

Jennifer Davenport, Acting Union County Prosecutor, attorney for respondent (Milton Samuel Leibowitz,

Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant was tried before a jury and found guilty of third-degree receiving stolen property, N.J.S.A. 2C:20-7, and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). Defendant appeals from the judgment of conviction dated April 20, 2017. We affirm.

I.

In June 2014, a Union County grand jury charged defendant with third-degree receiving stolen property (a 2014 Ford Mustang), N.J.S.A. 2C:20-7 (count one); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count two); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count three); fourth-degree possession of hollow-point bullets, N.J.S.A. 2C:39-3(f) (count four); fourth-degree unlawful possession of a high-capacity magazine, N.J.S.A. 2C:39-3(j) (count five); second-degree possession of a firearm while possessing a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:39-4.1(a) (count six); third-degree possession of CDS (Methamphetamine), N.J.S.A. 2C:35-10(a)(1) (count seven); third-degree possession of CDS, N.J.S.A. 2C:35-10.3(a) (count eight); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a) (1) and -5(b)(3)

(count nine); third-degree possession and distribution of synthetic cannabinoid with intent to distribute, N.J.S.A. 2C:35-5.3(b) (count ten); third-degree possession of CDS with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7 (count eleven); second-degree possession of CDS with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (count twelve); fourth-degree aggravated assault upon a police officer, N.J.S.A. 2C:12-1(b)(5) (count thirteen); second-degree taking or attempting to take unlawful control of a weapon of a law enforcement officer, N.J.S.A. 2C:12-11 (count fourteen); and third-degree resisting arrest, N.J.S.A. 2C:29-2(a) (count fifteen).

Thereafter, defendant filed a motion to suppress the evidence the police seized during a stop of the motor vehicle he was driving. After conducting an evidentiary hearing, the court denied defendant's motion to suppress the gun and CDS found in the passenger compartment of the car, but granted the motion to suppress the bullets found in the trunk.

Prior to trial, the State moved to sever counts thirteen, fourteen, and fifteen. The court granted the motion. The court also denied defendant's motion to suppress the statement he provided to the police. Thereafter, defendant was tried before a jury, which found him guilty of receiving stolen property (count one), and unlawful possession of a handgun (count two), but not guilty of

possession of a defaced firearm (count three), and possession of CDS (counts seven and eight). The other counts were dismissed prior to or during the trial.

The court later sentenced defendant to four years of incarceration on count one, and seven years of incarceration, with forty-two months of parole ineligibility on count two. The court ordered that the sentences would run concurrent to each other, but consecutive to the sentence defendant was then serving as a result of a conviction in Essex County. The court also imposed monetary assessments and penalties.

On appeal, defendant argues:

> POINT I
> THE MOTION COURT ERRED IN DENYING SUPPRESSION OF THE CONTRABAND FOUND IN THE PASSENGER COMPARTMENT OF THE CAR DRIVEN BY THE DEFENDANT. U.S. CONST., AMEND., IV, XIV; N.J. CONST. [(1947)], ART. 1, PAR. 7.
>
> POINT II
> THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE IN GRANTING THE STATE'S MOTION FOR SEVERANCE, NECESSITATING REVERSAL. U.S. CONST., AMEND. XIV; N.J. CONST. (1947), ART. 1, PAR. 9.
>
> POINT III
> REVERSAL IS NECESSITATED BY THE STATE'S FLAGRANT VIOLATION OF THE TRIAL COURT'S SEQUESTATION ORDER AND THE COURT'S FAILURE TO ORDER A MISTRIAL SUA SPONTE.

4

U.S. CONST., AMEND. XIV; N.J. CONST. (1947), ART. 1, PAR. 9.

POINT IV
THE TRIAL COURT IMPOSED AN EXCESSIVE SENTENCE BY ORDERING THAT IT RUN CONSECUTIVELY TO AN EXISTING EXTENDED-TERM SENTENCE, NECESSITATING [A] REDUCTION [IN THE SENTENCE].

II.

We turn first to defendant's contention that the trial court erred by denying his motion to suppress the contraband found in the passenger compartment of the car he was driving.

At the suppression hearing, Officer Joseph Devlin of the Union Township Police Department (UTPD) testified that, on February 12, 2014, at approximately 4:30 a.m., he and Officer Debra Rodriguez were on patrol in a police cruiser near the intersection of Walker Avenue and Oakland Avenue when they encountered a red Ford Mustang. The officers entered the Mustang's license plate number into the cruiser's computer terminal and discovered that the Mustang had been reported stolen. Devlin and Rodriguez turned north on Walker Avenue and attempted to locate the vehicle. They found the car parked on the side of the road. The officers stopped one-car length in front of the vehicle and exited the cruiser, but they did not activate the cruiser's lights or

A-4281-16T4

sirens. The officers drew their service weapons and approached the red Mustang.

The driver-side door of the car opened and the driver, who was later identified as defendant, stepped out. Devlin yelled at defendant to show his hands. Defendant did not comply initially, but after Devlin repeated the command several times, he showed his hands. Devlin ordered defendant to turn around and place his hands on the vehicle.

Rodriguez called police headquarters over her radio to "confirm" that the Mustang was reported stolen. After receiving confirmation, the officers handcuffed and searched defendant. They told defendant he was under arrest for receiving stolen property and placed him in the back seat of the police vehicle. Thereafter, at least four police officers arrived on the scene.

The officers searched the passenger compartment of the vehicle and discovered a handgun in the space between the center console and the front-passenger seat. In addition to the handgun, the officers found a prescription bottle in the center console, and two boxes containing twenty-five bullets in the trunk.

Two officers remained with the car while Devlin and other officers transported defendant to police headquarters. Defendant fought with the officers

and resisted the officers' attempts to search him. The officers believed defendant might be attempting to prevent them from discovering other contraband.

Devlin obtained permission to conduct a strip search. The officers removed defendant's shirt, jeans, and socks. They found a plastic bag in the coin pocket of defendant's jeans. The bag contained a crystalline substance that was later identified as the drug commonly known as Ecstasy.

The motion judge filed an opinion, in which he concluded that: (1) defendant had standing to challenge the search; (2) the officers made a valid stop of the vehicle; (3) the officers were allowed to search the area around the driver's seat for evidence of ownership of the car, and validly discovered items in the center console and between the console and the front seat; (4) exigent circumstances did not permit the officers to conduct a search of the trunk; and (5) the officers validly searched defendant incident to his arrest. The judge memorialized his decisions in an order dated March 23, 2015, which denied defendant's motion to suppress the gun and CDS found in the passenger compartment of the car, but granted the motion to suppress the items found in the trunk.

On appeal, defendant argues that the judge should have suppressed the gun and drugs found in the passenger compartment of the car. He contends the

search was not authorized by any recognized exception to the warrant requirement. We disagree.

The Constitution of the United States and the New Jersey Constitution protect individuals against "unreasonable searches and seizures" of the persons, homes, papers, and effects. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Warrantless searches are presumed to be unreasonable and are prohibited unless a court determines they fall within a recognized exception to the warrant requirement. State v. Terry, 232 N.J. 218, 231 (2018) (citing State v. Elders, 192 N.J. 224, 246 (2007)). "One of the established exceptions to the warrant requirement is the automobile exception." Ibid. (citing Carroll v. United States, 267 U.S. 132, 153 (1925)).

"A corollary to the automobile exception . . . is the authority of a police officer to conduct a pinpointed search for proof of ownership when a motorist 'is unable or unwilling to produce his registration or insurance information.'" Id. at 232 (Citing State v. Keaton, 222 N.J. 438, 442-43 (2015)). "This limited registration search exception is partly rooted in the common-sense notion that the inability or unwillingness of a driver to produce a vehicle's registration may raise 'a reasonable suspicion that the vehicle was stolen.'" Ibid. (quoting State v. Holmgren, 282 N.J. Super. 212, 216 (App. Div. 1995)).

8

Under federal constitutional law, the automobile exception permits law enforcement officers to undertake a warrantless search of a motor vehicle if the vehicle is readily mobile and there is probable cause to believe the vehicle contains evidence of a crime.  Pennsylvania v. Labron, 518 U.S. 938, 940 (1996).  In Maryland v. Dyson, 527 U.S. 465, 466 (1999), the Court again held that under federal law, the automobile exception has no exigency requirement.

However, in State v. Peña-Flores, our Supreme Court reaffirmed its "unwavering precedent" that under the New Jersey Constitution, a warrantless search of a motor vehicle is permissible only when "(1) the stop is unexpected; (2) the police have probable cause to believe that the vehicle contains contraband or evidence of a crime; and (3) exigent circumstances exist under which it is impracticable to obtain a warrant."  198 N.J. 6, 28 (2009) (quoting State v. Cooke, 163 N.J. 657, 667-68 (2000)).

The Court addressed the issue again in State v. Witt, 223 N.J. 409, 441-47 (2015), and eliminated the exigency requirement of the automobile exception.  The Court did not, however, adopt the federal standard for automobile searches because, in its view, "that standard is not fully consonant with the interests embodied in Article I, Paragraph 7 of our State Constitution." Id. at 447.

9

In Witt, the Court held that the automobile exception permits a law enforcement officer to undertake a warrantless search of a motor vehicle when the officer has probable cause to believe the vehicle has contraband or evidence of an offense, and the circumstances giving rise to probable cause are unforeseeable and spontaneous. Id. at 447-48 (citing State v. Alston, 88 N.J. 211, 233 (1981)). The Court stated that its decision was prospective and Peña-Flores would be applied to motor vehicle stops that occurred before the date of its decision. Id. at 449-50.

The search in this case took place on February 12, 2014, and the motion judge correctly applied the Peña-Flores standard in determining whether the search of the passenger compartment was valid. The judge found that the stop was unforeseen and spontaneous, and that the police had probable cause to believe the vehicle contained evidence of a crime, specifically, the theft of the vehicle. The judge further found that the officers were permitted to undertake a limited search of the passenger compartment of the car for evidence of ownership of the vehicle. We are convinced there is sufficient credible evidence in the record to support the judge's findings. The judge's decision was consistent with Peña-Flores.

10

In one of the cases considered by the Court in Peña-Flores, the case involving the defendant Charles Fuller, an officer observed the defendant driving a GMC Yukon without a seatbelt and stopped the vehicle on a street in Camden. Peña-Flores, 198 N.J. at 14. The defendant provided the officer with a Pennsylvania driver's license and a bill of sale. Id. at 15. The license was issued in the name of Charles Bradley. Ibid. The officer checked with the sheriff's department and learned that the bill of sale and the Pennsylvania license plate corresponded to a Ford Expedition, not the GMC Yukon that the defendant had been driving. Id. at 16. The sheriff's department dispatcher told the officer that the name Charles Bradley was an alias. Ibid.

Fuller was arrested for displaying a false driver's license and hindering his own apprehension. Ibid. The officer and at least one other officer searched Fuller, placed him in the police vehicle, and searched the interior of the GMC Yukon, beginning with the driver-side compartment. Ibid. The officers found a loaded handgun wedged between the console and the driver's seat. Ibid. The officers also found money and two bottles containing alprazolam (Xanax) in the console. Ibid. In the dashboard compartment above the radio, the officers found marijuana. Ibid. Additional marijuana was found behind the backseat. Ibid.

The Court stated that the officer had pulled Fuller over unexpectedly after observing the traffic violation.  Id. at 31.  The Court noted that the officer had been informed the license plate and the bill of sale did not correspond to the GMC Yukon that Fuller had been driving.  Ibid.  The Court held that "separate and apart from the automobile exception," the officers were entitled to search those areas in the car where evidence of ownership might be found.  Ibid. (citing State v. Boykins, 50 N.J. 73, 77 (1967); State v. Jones, 195 N.J. Super. 119, 122-23 (App. Div. 1984)).  The Court determined that the gun found between the console and the front seat, and the Xanax pills found in the console, were not subject to suppression.  Id. at 31-32.

The Court further found that because Fuller had been arrested and secured in the police vehicle, no cohorts had come upon the scene, and the arresting officer was assisted by one to three other officers, there was "no urgent, immediate need for the officers to conduct a full search of the automobile."  Id. at 32.  Thus, the evidence found under and behind the backseat and in the radio compartment of the dashboard was subject to suppression.  Id. at 33.

Defendant argues that in Terry, the Court narrowed the criteria for a credentials search, and under that standard, the search of the passenger compartment in this case cannot be justified.  He argues that based on the

12                                                          A-4281-16T4

license-plate check, the officers knew that defendant was not in lawful possession of the car. Defendant also asserts that since he had been arrested and secured in the police cruiser, there was no need for the officers to undertake a warrantless search for ownership credentials. We disagree.

In Terry, the Court reaffirmed the principle that when the police lawfully stop a motor vehicle, and afford the motorist a reasonable opportunity to produce ownership credentials, the police may conduct a brief and targeted search of the area where such credentials might normally be kept if the motorist is unable or unwilling to produce the documents. Terry, 232 N.J. at 239. Thus, Terry did not narrow the criteria for a credentials search. Moreover, as we have explained, the trial court's decision was squarely in line with Peña-Flores, which applied to the search.

Here, the record shows defendant was validly stopped for a traffic violation. He was asked to exit the car. Initially, defendant refused to comply with the officers' direction that he show his hands. After the officers confirmed the vehicle had been reported stolen, they handcuffed defendant, placed him under arrest, and secured him in the police cruiser. Defendant was therefore unable to produce his ownership credentials. Although the officers were informed that the vehicle had been reported stolen, they had the authority to

undertake the limited search of the car for the ownership credentials to confirm that fact.

We therefore conclude the trial court did not err by denying defendant's motion to suppress the gun and the drugs found in the passenger compartment of the car. In view of our decision, we need not consider the State's argument, raised for the first time on appeal, that denial of the suppression motion was also valid under the inevitable discovery doctrine.

III.

Next, defendant argues that the trial court erred by granting the State's motion to sever counts thirteen, fourteen, and fifteen. Those charges arose from defendant's altercation with the police while he was being processed at police headquarters. Defendant contends that by severing these charges, the court denied him his right to present a "full defense."

A decision on whether to sever counts in an indictment is committed to the discretion of the trial court, and the trial court's decision will not be disturbed unless shown to be a mistaken exercise of discretion. State v. Sterling, 215 N.J. 65, 73 (2013) (citing State v. Chenique-Puey, 145 N.J. 334, 341 (1996)). Defendant has not shown the court's decision to sever counts thirteen, fourteen, and fifteen was an abuse of discretion.

Rule 3:15-2(b) provides that the court may sever counts in an indictment "[i]f for any other reason it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses . . . in an indictment[.]" The rule further provides that if such prejudice is shown, "the court may order an election or separate trials of counts[.]" Ibid.

In determining whether joinder of offense is prejudicial, the court must consider "whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges." Chenique-Puey, 145 N.J. at 341 (quoting State v. Pitts, 116 N.J. 580, 601-02 (1989)). Rule 404(b) provides,

> Except as otherwise provided by Rule 608(b) evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.
>
> [N.J.R.E. 404(b)].

In State v. Cofield, 127 N.J. 328, 338 (1992), the Court established a four-prong test for the admission of other-crimes evidence. The other-crime evidence must be relevant to a material issue; the evidence must be "similar in kind and

15

reasonably close in time to the offense charged"; the evidence must be clear and convincing; and "[t]he probative value of the evidence [of the other crime or crimes] must not be outweighed by its apparent prejudice." Ibid.

Here, the judge found that although the charges all arose from events that occurred on the same day, the charges could be placed into two categories: the stolen-property and possessory charges in counts one to twelve, and the assault and resisting-arrest charges in counts thirteen, fourteen, and fifteen. The judge found that there was minimal probative value in having all counts tried together, since the evidence necessary to prove the stolen-property and possessory counts was not required to prove the other charges.

The judge also found that the potential for prejudice from joinder of the offenses for trial was significant. The judge noted that the assault and resisting-arrest charges involved allegations by defendant that the officers used derogatory terms toward him, which were inherently prejudicial and inflammatory, but the alleged comments had no probative value to the stolen property and possessory offenses. The judge considered the surveillance footage of defendant's interaction with the police at the police station, and stated that he was concerned that in considering the stolen-property and possessory

16

offenses, the jurors "might look at [defendant] resisting arrest [,] . . . say he's a bad guy, [and] we're going to stick it to him on the stolen property counts[.]"

The judge also found that the State would suffer prejudice if the charges were tried together. The judge noted that defendant intended to introduce evidence that the police used derogatory terms toward him in his defense to the charges in counts thirteen, fourteen, and fifteen. The judge expressed his concern that if the jury heard this evidence, it might give defendant "a pass" on the stolen-property and possessory counts.

On appeal, defendant argues that the judge's ruling was "deeply flawed." He contends Rule 3:7-6 and Rule 3:15-1(b) require that all fifteen of the counts be tried together. He further argues that charges are based on a series of inter-connected events, which transpired within a relatively short period of time, and the jury could not fairly evaluate the charges if they were "artificially divorced."

We are not persuaded by defendant's arguments. Neither Rule 3:7-6 nor Rule 3:15-1(b) required the court to try all of the counts of the indictment in a single proceeding. Indeed, Rule 3:15-2(b) expressly provides that the court may sever counts in an indictment if "it appears that a defendant or the State" would be prejudiced by the joinder of the offenses.

Here, the record supports the court's determination that both defendant and the State would be prejudiced if counts thirteen, fourteen, and fifteen were tried along with the other counts. We conclude the court's decision to sever the charges was not a mistaken exercise of discretion.

IV.

Defendant further argues that his convictions should be reversed because of the State's "flagrant violation" of the trial court's order sequestering witnesses. He contends the court erred by failing to order a mistrial sua sponte.

In certain circumstances, a trial court may declare a mistrial sua sponte. See State v. Loyal, 164 N.J. 418, 436-37 (2000); State v. Rechtschaffer, 70 N.J. 395, 405 (1976). Generally, a court should only declare a mistrial in situations where "manifest injustice" would otherwise result. State v. DiRienzo, 53 N.J. 360, 383 (1969). Furthermore, a court should only exercise the power to declare a mistrial sua sponte "with the greatest caution, under urgent circumstances, and for very plain and obvious causes." Loyal, 164 N.J. at 436 (quoting United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824)).

In a criminal trial, a violation of a sequestration order will constitute reversible error warranting a mistrial only where the violation prejudices the defendant and the prejudice cannot be addressed by remedial action. State v.

Tillman, 122 N.J. Super. 137, 140 (App. Div. 1973) (citing State v. Smith, 55 N.J. 476, 485 (1969); State v. Michalis, 99 N.J.L. 31, 34 (Sup. Ct. 1923)). Such remedial actions include calling "the disobedience of the order to the attention of the jury as bearing on the credibility of the witnesses involved," and allowing the parties to "interrogate the witnesses as to what occurred" and comment on the testimony in their closing arguments. Id. at 143-44.

The record shows that defendant called Detective Diane Spann of the UTPD as a witness for the defense. She testified that she transferred the seized handgun to a laboratory for ballistics testing. Defendant's attorney asked Spann whether she had spoken "to someone" in the hallway outside the courtroom before she testified.

The assistant prosecutor objected and the judge immediately discussed the matter with counsel at sidebar. Defendant's attorney explained to the judge that he observed Spann speaking with Detective Donald Cook of the UTPD in the hallway, in violation of the court's sequestration order.

The judge permitted defendant's attorney to question Spann outside the jury's presence about the hallway conversation. Spann admitted that she spoke with Cook in the hallway. She also acknowledged she was aware that the court's sequestration order prohibited her from speaking with other witnesses during the

trial. She stated that Cook told her about a chain-of-custody report he had in his file, but she did not elaborate on the conversation.

The judge then questioned Cook, also outside the jury's presence. Cook admitted that he spoke with Spann in the hallway. He stated that he told Spann that, during his testimony on the prior day of trial, defense counsel had questioned him regarding the chain of custody of the seized handgun using an incomplete photocopy of the original chain-of-custody report. He told Spann he knew the photocopy was incomplete because, after he testified, he located the original report in the case file.

The judge told the attorneys he would permit them to question Cook and Spann before the jury about the hallway conversation. The trial continued. Counsel questioned Spann and Cook regarding their conversation. The State then introduced into evidence a complete copy of the chain-of-custody report.

We are convinced that under the circumstances, the trial judge did not err by failing to declare a mistrial sua sponte. As noted, Cook and Spann had spoken in the hallway, and in doing so, they violated the court's sequestration order. Defendant has not shown, however, that Cook and Spann's hallway discussion substantially prejudiced his defense.

Moreover, any possibility of prejudice resulting from the violation of the sequestration order was minimized by the judge's remedial measures. As noted, the judge permitted the attorneys to question Cook and Spann before the jury about the hallway conversation. Defendant's attorney was able to point out discrepancies in the versions of the chain-of-custody reports, challenge certain statements in the reports, and otherwise attempt to impeach the testimony of these witnesses. The jury could consider this testimony and evidence when assessing Cook and Spann's credibility.

We therefore conclude that the judge did not err by failing to declare a mistrial sua sponte. Defendant suffered no actual prejudice from the violation of the sequestration order, and the judge's remedial measures addressed any possibility that the violation would prejudice the defense.

V.

Defendant also argues that by ordering his sentence to be served consecutively to another sentence defendant was serving, the judge imposed an excessive sentence. We cannot agree.

We review a sentence imposed by the trial court under an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018). In doing so, we consider whether: "(1) the sentencing guidelines were violated; (2) the findings

A-4281-16T4

of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record'; [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Here, the judge found aggravating factor three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense). The judge based that finding on, among other things, defendant's prior drug use and his lack of stable employment. The judge also found aggravating factor six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record and the seriousness of the offenses for which defendant has been convicted). The record shows that defendant has previously been convicted of multiple acts of grand larceny, a CDS offense, and unauthorized possession of a weapon.

In addition, the judge found aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The judge noted that there was a need to deter defendant from engaging in criminal conduct and also a need to deter others from committing similar offenses. The judge found no mitigating factors, and found that the aggravating factors substantially outweighed the non-existing mitigating factor.

As noted previously, the judge sentenced defendant to seven years of imprisonment, with forty-two months of parole ineligibility, on count two (second-degree unlawful possession of the weapon). The judge sentenced defendant to a four-year term of incarceration on count one (third-degree receiving stolen property). The judge ordered that the sentences be served concurrent to each other, and consecutive to a sentence defendant was serving as a result of an earlier conviction in Essex County.

In determining whether to impose a consecutive sentence, the judge undertook the analysis required by State v. Yarbough, 100 N.J. 627, 643-44 (1985). There, the Court set forth the following criteria for determining whether to impose concurrent or consecutive sentences:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>> (a) the crimes and their objectives were predominantly independent of each other;
>>
>> (b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.[1]

[Ibid.]

The judge noted that the offenses for which defendant was convicted in this matter, and the offenses that resulted in the Essex County sentence "were predominantly independent of each other" because they "involved separate

---

[1] The overall outer limit on the cumulation of consecutive sentences for multiple offenses was superseded by L. 1993, c. 223. See State v. Brown, 138 N.J. 481, 559 (1994).

acts," occurred "at different times or separate places" and involved "different victims." The judge's findings are supported by the record.

Defendant argues, however, that the judge erred by ordering that his sentence be served consecutively to the Essex County sentence. He contends that while the offenses for which he was convicted in this case, and those for which he was sentenced in Essex County arose from separate incidents, the judge had the discretion to impose concurrent sentences and should have done so.

Defendant contends that by ordering the sentence to be served consecutive to the Essex County sentence, the judge increased his total period of imprisonment to twenty-seven years, with thirteen and one-half years of parole ineligibility. He asserts that none of the offenses involved violence against other persons, and his presentence report reveals "positive achievements." He also cites various personal factors that he believes weighed in favor of concurrent sentences, including an out-of-wedlock birth, an absent mother, an incarcerated brother, and an upbringing in an area of high crime and drug activity.

We are not persuaded by these contentions. Here, the judge undertook the analysis required by Yarbough, and his findings are supported by the record.

A-4281-16T4

The sentence is not an abuse of discretion and does not "shock the judicial conscience." Bolvito, 217 N.J. at 228.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION