172 N.J. Super. 558 (1980)
412 A.2d 1325
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD T. SESSIONS A/K/A VERNON L. LEWIS, DEFENDANT-APPELLANT, AND ARCHIE T. HARDISON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1980.
Reargued January 31, 1980.
Decided February 27, 1980.
*560 Before Judges FRITZ, KOLE and LANE.
Harvey Grossman, Assistant Deputy Public Defender, argued the cause for appellant Donald T. Sessions (Stanley C. Van Ness, Public Defender, attorney; Susan Fessler, Assistant Deputy Public Defender, of counsel and on the brief).
*561 Fred A. Liff, designated counsel, argued the cause for appellant Archie T. Hardison (Stanley C. Van Ness, Public Defender, attorney).
Miriam Kahan Brody, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KOLE, J.A.D.
Defendants Hardison and Sessions were found guilty by a jury of unlawful possession of a controlled dangerous substance, namely heroin, N.J.S.A. 24:21 20(a)(1), and not guilty of unlawful possession of such substance with intent to distribute it, N.J.S.A. 24:21 19(a)(1). Each defendant was sentenced to a one to two-year term in State Prison to run consecutively to the term that he was then serving in South Carolina. Both defendants appeal.

Sessions' Contentions
Sessions claims that the trial judge erred in admitting his extra-judicial statements of March 8, 1977 and March 12, 1977 into evidence. He contends that his statement on March 8, 1977, the night of his arrest, to the effect that the denim jacket found in the automobile was his, was extracted from him without the requisite Miranda warnings (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)); and his subsequent statement to Detective Coyle on March 12, 1977 was tainted by his initial statement, and that they both should have been suppressed. He also asserts that since the search and seizure here involved were illegal, both statements are inadmissible as having been tainted thereby. The trial judge conducted two Miranda voir dire hearings (one of which also covered a motion to suppress evidence) and held both statements to be admissible.
The facts that follow were developed at the voir dire hearings.
*562 The first statement which Sessions alleges was improperly admitted occurred on the evening of March 8, 1977, the night of the arrest. At about 10:45 p.m. State Troopers Willhouse and Callahan were on uniformed patrol in a marked squad car, southbound on the New Jersey Turnpike, in Cranbury Township. At that time they observed a 1969 Chevrolet, bearing South Carolina license plates, that was "weaving" from lane to lane. They turned on their overhead lights in pursuit of the vehicle. Two individuals were observed in the vehicle. They were "bobbing around in the car ... and reaching around in the front seat...." Sessions, the passenger, was hunched over. He straightened up and looked back at the officers and then hunched over again. The driver, Hardison, made a similar forward movement toward the right. The officers then pulled the vehicle over.
Following the stop of defendants' car Willhouse approached Sessions on the passenger side of the vehicle. Callahan approached Hardison on the driver's side. Callahan asked Hardison to step out of the vehicle and asked him for his driver's license and registration. As Willhouse approached Sessions he saw Sessions closing the glove compartment "like he just put something in the glove compartment." The passenger's door was opened and Sessions knocked a Coke bottle filled with water out onto the pavement. On Sessions' knee there was a bloody napkin and a small penknife.
Willhouse asked Sessions to get out of the vehicle. A patdown search of Sessions produced no weapons. The troopers, by reason of their observation of defendants' behavior, reasonably concluded that they were under the influence of narcotics.
Callahan conducted a patdown search of Hardison and found a small bag of marijuana in his vest pocket. Callahan escorted Hardison to the rear of the vehicle where Willhouse had brought Sessions.
Willhouse proceeded to check the interior of the car for a possible weapon. He saw a denim jacket between the front bucket seats. As he picked up the jacket he saw glassine bags *563 in its pocket. He "stepped back out of the car and ... asked who owned the jacket and ... Sessions advised it was his...." At this point Willhouse advised Callahan that "they had ... what I believed to be heroin." Sessions had not been advised of his Miranda rights prior to the trooper's question. Over defendant Sessions' objection, the trial judge ruled that the statement of ownership by Sessions was admissible without that advice. This ruling was correct. State v. Barnes, 54 N.J. 1 (1969), cert. den. 396 U.S. 1029, 90 S.Ct. 580, 24 L.Ed.2d 525 (1970). See, also, State v. Mann, 171 N.J. Super. 173 (App.Div. 1979); State v. Elysee, 159 N.J. Super. 380, 387 (App.Div. 1978).
Willhouse's question was spontaneous and open-ended, not asked in the context of an interrogation, and was not specifically directed to Sessions. It was the only question that was asked and Sessions was under no compulsion to answer. The single question asked was not an essential part of the investigation which led to Sessions' arrest, nor was it one of a series of investigatory queries. It was not the type of question that centered blameworthiness on Sessions. He could have attributed possession to anyone, or no one, in answer to a question which was not even specifically directed to him.
We are satisfied that the statement made to Detective Coyle by Sessions on March 12, 1977 was preceded by appropriate Miranda warnings. The statement was given four days after the arrest and after Sessions had been released from custody on bail. We are also satisfied that Sessions understood his Miranda rights and voluntarily waived them. This second statement was in no sense affected by the earlier statement to Willhouse at the scene of the arrest. It was simply an elaboration of the first statement relating how he had obtained the heroin. Since we have held that the first statement was properly admitted, the second statement was plainly not tainted thereby. In any event, even if the earlier statement was inadmissible, there was a sufficient time lapse while Sessions was free on bail between the first and second statement to justify the *564 conclusion that it was made voluntarily and without any reliance upon the first statement. See State v. Melvin, 65 N.J. 1, 11 13 (1974); State v. Wade, 116 N.J. Super. 449 (App.Div. 1971). See also, State v. Fariello, 71 N.J. 552, 569 572 (1976). Cf. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).
Since, as indicated below, we hold that the officers' search of the vehicle, jacket and glove compartment was proper, Sessions' statement at the scene of the arrest cannot be said to be tainted by an illegal search and seizure. Additionally, that statement occurred before the denim jacket or the car, including the glove compartment, was searched.
Accordingly, both statements were properly admitted at the trial.
Sessions asserts that the trial judge erred in denying his motion to suppress as evidence the heroin and the other items found in the search of the car.
After Willhouse had escorted Sessions to the rear of the vehicle Willhouse returned to defendants' automobile, intending to check its interior for a possible weapon, reached in and pulled out a denim jacket, which he could see contained glassine bags. At this point Willhouse knew that Callahan had found marijuana on Hardison and had seized it. When Sessions stated that the jacket was his, Willhouse looked inside it and found "around 80 packets" of heroin. He also found a pipe and a pill bottle containing 11 yellow tablets in the jacket. He then began a further search of the interior of defendants' vehicle. He found a "cooker" and several empty glassine bags and two hypodermic needles, apparently in the glove compartment.
Sessions contends that although the trooper may have acted properly in stopping the car, arresting the occupants for their apparent use of drugs and patting them down for weapons, he had no basis for searching the vehicle for proof of ownership or for drugs, since he had testified that he was searching for weapons. Sessions asserts that since he and Hardison were no longer in the vehicle, it could not have been searched as a search *565 incident to their arrest. Moreover, since defendants had been removed from the car, it is claimed that there was no danger to the troopers and thus there were no exigent circumstances that could dispense with the requirement of a search warrant prior to the search and seizure. Accordingly, it is claimed that the evidence should have been suppressed.
There is no merit to these contentions. We are satisfied, as was the trial judge, that under the circumstances of this case the search and seizure here challenged were entirely reasonable and legally unassailable.
Ever since Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), courts have recognized what has come to be known as the "automobile exception" to the warrant requirement. The validity of this exception was reaffirmed and its underlying rationale was restated by the court in Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). The court there addressed the question whether, in the absence of exigent circumstances, police are required to obtain a warrant before searching luggage taken from an automobile stopped and searched for contraband. However, Sanders further held that given probable cause to search and the mobility of the vehicle when it is stopped, the stop and search of the automobile itself is legally permissible.
The inquiry to be made as to the validity of the warrantless search in the present case is twofold: (1) at the scene did the police have probable cause to search the automobile, and (2) were the exigencies then arising from the movable nature of the vehicle such that a warrantless search was justified? If the answer to both questions is in the affirmative, the search was constitutionally valid. See Sanders, supra, 442 U.S. at 765, n. 14, 99 S.Ct. at 2594, n. 14, 61 L.Ed.2d at 246, n. 14; State v. Kahlon, 172 N.J. Super. 331 (App.Div. 1980). We answer both inquiries in the affirmative.
Here, the police observations of defendants' furtive and unusual movements before and after they stopped their vehicle *566 made it entirely reasonable for them to believe that defendants had a weapon in the car or had placed a weapon in or taken it out of the jacket found between the front seats thereof. Willhouse had observed Sessions closing the glove compartment as if he had just placed something inside. Their belief that there might be a weapon in the car was fortified by the fact that defendants appeared to be under the influence of narcotics and that the police found a Coke bottle full of water, a penknife and a bloody napkin on or near Sessions. Additionally, Callahan had already found marijuana on Hardison's person.
Unlike State v. Slockbower, 79 N.J. 1 (1979), and State v. Ercolano, 79 N.J. 25 (1979), the vehicle in the present case was not impounded. It was 10:45 p.m. The vehicle was movable. The intent and purpose of the police was to search the vehicle, the jacket found therein and the glove compartment for weapons. A plain exigency existed justifying a warrantless search thereof at the scene and the subsequent seizure of the items found therein. Under these circumstances it would have been foolhardy and not readily practicable for the police to have obtained a warrant for this purpose prior to the search and seizure  and this, even though both defendants were out of the vehicle or may have been in custody at the time. See State v. Ercolano, supra at 38, 43 46; State v. Waltz, 61 N.J. 83, 88 (1972); State v. Gaines, 147 N.J. Super. 84, 96 97 (App.Div. 1975), aff'd o.b. State v. Powers, 72 N.J. 346 (1977); State v. Murray, 151 N.J. Super. 300 (App.Div. 1977), certif. den. 75 N.J. 541 (1977); State v. Kennedy, 134 N.J. Super. 454 (App.Div. 1975); State v. McCarthy, 130 N.J. Super. 540, 543 545 (App.Div. 1974); State v. Boone, 114 N.J. Super. 521 (App.Div. 1971); State v. Brown, 160 N.J. Super. 227 (Law Div. 1978). See, also, State in the Interest of H.B., 75 N.J. 243, 251 252 (1977); State v. Kahlon, supra.[1]
*567 The search here of the vehicle, glove compartment and jacket may also be justified under the theory set forth in State v. Boykins, 50 N.J. 73, 77 (1967), where the Supreme Court stated that if the officer has reason to believe the driver is under the influence of liquor or drugs, he may search the car for alcohol or narcotics.
In the present case, since the officers had concluded that both defendants appeared to be under the influence of narcotics, they could have searched the vehicle for narcotics. The fact that defendants were not arrested for driving under the influence of drugs does not alter this result. State v. Boone, supra, 114 N.J. Super. at 524 525.
The trial judge's denial of Sessions' motion to suppress was proper.

Hardison's Contentions
Hardison claims that the trial judge erred in denying his motion to suppress as evidence the marijuana found in his vest pocket and the heroin found in his sock.
The search of Hardison's person was conducted by Officer Callahan. Hardison contends that the search was unlawful because (1) there was no probable cause to search, (2) the search was not incident to a valid arrest and (3) his "body search" was unreasonable.
From our discussion of the search and seizure issue and the cases we have cited in connection with Sessions' contentions, it is evident that the stop of the vehicle being operated by Hardison, the direction that he leave the automobile and the subsequent patdown of his person by Callahan were plainly reasonable and legally proper. See, additionally, Delaware v. Prouse, 440 U.S. 648, 662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660, 673 (1979); Pennsylvania v. Mimms, 434 U.S. 106, 110, 98 S.Ct. 330, 333, 54 L.Ed.2d *568 331, 337 (1977); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
After Hardison exited the automobile Callahan conducted a patdown search of Hardison and found a small bag of marijuana in his vest pocket. Hardison contends that even though a frisk of his person for a weapon was proper, the frisk here was not, since marijuana, rather than a weapon, was found.[2]
For the reasons set forth in our discussion of Sessions' search and seizure contention, Callahan would have been indeed rash not to have frisked Hardison for a possible weapon. The fact that contraband other than a weapon was found does not invalidate the patdown frisk conducted by Callahan, and the evidence thus found  the marijuana  is admissible. See State v. Campbell, 53 N.J. 230, 236 238 (1969); State v. Dennis, 113 N.J. Super. 292 (App.Div. 1971) certif. den. 58 N.J. 337 (1971). See, also, State v. Boykins, supra.
Shortly after Callahan found the marijuana in Hardison's vest pocket, Willhouse found the heroin in the denim jacket. At that point Callahan handcuffed Hardison and conducted a further search of his person. He found a plastic bag in Hardison's sock containing heroin.
Hardison argues that the heroin should have been suppressed as evidence. He contends that Callahan's search of his person was not proper under a search incident to arrest theory, claiming that Callahan did not have probable cause to arrest him before the search was conducted. Hardison asserts that the marijuana Callahan found earlier was illegally seized and that, accordingly, his later search was improper. Hardison further states that he was not arrested until after Willhouse found the heroin in the denim jacket and that that heroin did not give *569 Callahan probable cause to arrest him, since it was not shown that Hardison had had anything to do with the jacket.
These contentions are without substance. At the time Callahan searched Hardison, he had probable cause to arrest him for driving under the influence of drugs and for possession of marijuana. That Hardison was not so charged does not change this result. Probable cause for Hardison's arrest on these grounds clearly existed before the second search.
When a valid arrest based on probable cause has been made, a police officer is entitled to search the arrestee's person in order to protect himself and to insure that evidence is not destroyed. See Chimel v. California, 395 U.S. 752, 762, 89 S.Ct. 2034, 2039, 23 L.Ed.2d 685, 694 (1964); State v. Sims, 75 N.J. 337, 352-353 (1978); State v. Gray, supra, 59 N.J. at 569. Whether Callahan arrested Hardison before or after Willhouse searched the jacket does not have the determinative effect urged by Hardison. When Callahan searched Hardison's sock, it was clear that Hardison had been arrested and was handcuffed. Irrespective of the heroin found in the jacket, Callahan had probable cause to arrest Hardison for possession of marijuana. The second search clearly occurred after Hardison had been properly arrested. State v. Contursi, 44 N.J. 422, 433 (1965); State v. Doyle, 42 N.J. 334, 343 344 (1964). Thus, Callahan's actions were proper as a search incident to an arrest; the heroin found in his sock was not subject to suppression.
Hardison appears to claim that an arrest for a careless driving offense (for which he was not arrested) did not justify as reasonable Callahan's search of his person. This claim is plainly meritless. See State v. Boykins, supra, 50 N.J. at 77.
The trial judge correctly denied Hardison's motion to suppress.
Hardison contends that the "cumulative effect" of the denial of his motion to suppress the evidence found in the search *570 of his person was so prejudicial as to have denied him a fair trial, relying on State v. Orecchio, 16 N.J. 125 (1954). The contention is clearly without substance. R. 2:11 3(e)(2).

Contentions of Both Defendants
Both defendants argue that the trial judge abused his discretion in imposing a claimed manifestly excessive term of one to two years to State Prison that was consecutive to, rather than concurrent with, terms they were serving in South Carolina.
We have considered defendants' respective arguments in the light of the nature and circumstances of the crime, the presentence reports and the judge's reasons for the sentences. We have concluded that their contentions are patently meritless. R. 2:11 3(e)(2).
Affirmed.
NOTES
[1] That Willhouse also believed that there might be narcotics in the jacket does not change the result we have reached. He had seen glassine bags in the pocket of the jacket prior to his search thereof. He properly took the bags out of the jacket. See State v. Gray, 59 N.J. 563, 568 (1971).
[2] Hardison's claim that Callahan's failure to testify at the suppression hearing precluded the State's having sustained its burden to show probable cause to arrest or search him is patently without merit.